UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| END CITIZENS UNITED PAC,<br><br>   *Plaintiff*,<br><br>  v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>   *Defendant*. | Civil Action No. 21-1665 (TJK) |

## MEMORANDUM

  End Citizens United, a political action committee, filed a complaint with the Federal Election Commission against former President Trump's campaign committee, alleging that the campaign had solicited and directed contributions to another committee in violation of the Federal Election Campaign Act, or FECA, more specifically 52 U.S.C. § 30125(e) and 11 C.F.R. § 300.61. The FEC dismissed the complaint, and End Citizens United filed this lawsuit against it over that nonenforcement decision. The FEC has not appeared or otherwise defended the action. Thus, after the Clerk of the Court entered default against the FEC, End Citizens United moved for default judgment. For the reasons explained below, the Court will deny the motion and dismiss the case.

*   *   *

  Under Federal Rule of Civil Procedure 55(b)(2), a court may enter a default judgment upon application. But "strong policies favor resolution of disputes on their merits," so "'[t]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.'" *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). "Default judgment may only be entered against the United States, its officers,

or its agencies 'if the claimant establishes a claim or right to relief by evidence that satisfies the court.'" *Campaign Legal Ctr. v. FEC*, No. 20-cv-809 (ABJ), 2021 WL 5178968, at *3 (D.D.C. Nov. 8, 2021) (quoting Fed. R. Civ. P. 55(d)).

End Citizens United argues that it is entitled to default judgment under FECA. That statute "includes an unusual provision that allows a private party to challenge a nonenforcement decision of the Federal Election Commission if it is 'contrary to law.'" *Citizens for Resp. & Ethics in Washington v. FEC* ("*New Models*"),[1] 993 F.3d 880, 882 (D.C. Cir. 2021) (quoting 52 U.S.C. § 30109(a)(8)(A), (C)). The D.C. Circuit has explained that this test reflects the Administrative Procedure Act's requirement that courts should "hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Citizens for Resp. & Ethics in Washington v. FEC* ("*Commission on Hope*"), 892 F.3d 434, 437 (D.C. Cir. 2018) (cleaned up).

But under these circumstances, the Court cannot review the FEC's nonenforcement decision. Despite FECA's uncommon provision, an FEC nonenforcement decision is not reviewable if the nonenforcement is "based even in part on prosecutorial discretion." *New Models*, 993 F.3d at 882. To the contrary, to "reconcil[e] FECA's provision of judicial review of actions 'contrary to law' with [*Heckler v.*] *Chaney*'s holding that judicial review is unavailable for exercises of prosecutorial discretion, [the D.C. Circuit] concluded that a Commission nonenforcement decision is reviewable only if the decision rests *solely* on legal interpretation." *Id.* at 885.

In this case, "the Commissioners who voted against enforcement invoked prosecutorial discretion to dismiss [End Citizen United's] complaint." *New Models*, 993 F.3d at 882. Those

---

[1] The Court will refer to cases filed by Citizens for Responsibility and Ethics in Washington ("CREW") by the name of the association against which CREW filed an administrative complaint with the FEC.

Commissioners explained that the vote on the complaint "took place shortly after the Commission had reacquired a quorum and faced a substantial backlog of hundreds of Matters—many of which were imperiled by the statute of limitations." Statement of Reasons of Vice Chair Allen Dickerson and Comm'r Sean J. Cooksey, MURs 7340 & 7609, at 3 (June 25, 2021).[2] Meanwhile, the Office of General Counsel's recommended penalty for End Citizens United's complaint, "which would be subject to further negotiation," was "a sum unlikely to exceed the Commission's expenses in obtaining it." *Id.* "In these circumstances," the Commissioners "concluded [that] the Commission's scarce resources would be best spent elsewhere." *Id.* And those "prudential concerns were buttressed by the likelihood of a successful and costly legal challenge to enforcement on the[] facts" at hand. *Id.* Given this exercise of prosecutorial discretion, under the Circuit precedent outlined above, this Court "lack[s] the authority to second guess" such a dismissal, and so may not enter default judgment against the FEC.[3] *New Models*, 993 F.3d at 882.

End Citizens United offers two arguments in response, but neither provides a basis to sidestep this clear rule. First, End Citizens United claims that the Court cannot rely on the Commissioners' Statement of Reasons "because the Commissioners did not issue that explanation at the time of their decision." ECF No. 10 at 14. Instead, the Commissioners provided this statement about two months after voting to dismiss the complaint—which was also four days after End Citizens United filed this suit. *See id.* at 6. According to End Citizens United, this amounts to a "post hoc justification" that "cannot support the Commission's action on review." *Id.* at 14. The Court disagrees.

---

[2] *Available at* https://www.fec.gov/files/legal/murs/7609/7609_13.pdf.

[3] The Court agrees that End Citizens United has standing to challenge the FEC's dismissal of its complaint. *See* ECF No. 10 at 10–12 (citing *Chamber of Com. of the U.S. v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995), and *Shays v. FEC*, 414 F.3d 76, 83 (D.C. Cir. 2005)).

In general, "[c]ourts do not . . . give credence to post hoc rationalizations for agency action, but instead consider only the regulatory rationale offered by the agency at the time of such action." *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 241 n.23 (D.D.C. 2011) (cleaned up). But this "'post hoc rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning." *Loc. 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976). Its aim is to prevent courts from upholding agency action based on "rationales offered by anyone other than the proper decisionmakers," *id.*, or rationales "developed in litigation to justify the decision," *Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C. 1996), *aff'd in part and remanded sub nom. Troy Corp. v. Browner*, 120 F.3d 277 (D.C. Cir. 1997). Thus, it "applies to rationalizations offered for the first time in litigation affidavits," "arguments of counsel," *Loc. 814*, 546 F.2d at 992 (internal citation omitted), and any bases for agency action that differ from the ones provided originally, *DHS v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908 (2020).

The Statement of Reasons here was written by the Commissioners who voted to dismiss End Citizens United's complaint—the very decisionmakers responsible for the agency action. Thus, it is a far cry from an argument of counsel or an affidavit submitted in connection with litigation. In addition, the Statement of Reasons is the only explanation these Commissioners have ever offered for their decision, so it does not contradict any justification expressed elsewhere. Finally, if the Commissioners had remained silent, the Court would have remanded the case to give "the Commission or the individual Commissioners . . . an opportunity to say why [End Citizens United's] complaint was dismissed." *Democratic Cong. Campaign Comm. v. FEC*, 831 F.2d 1131, 1135 (D.C. Cir. 1987); *id.* at 1132 ("Absent an explanation by the Commissioners for the FEC's

4

stance, we cannot intelligently determine whether the Commission is acting 'contrary to law.'"). And if, on remand, the Commissioners offered an explanation, the Court would be free to consider it. *Regents*, 140 S. Ct. at 1908. Thus, the Court sees no reason to ignore the explanation it already has before it from these Commissioners. *See Bolden v. Blue Cross & Blue Shield Ass'n*, 669 F. Supp. 1096, 1101–02 (D.D.C. 1986) (rejecting arguments to ignore the only articulation of the agency's rationale even though the articulation was provided eight months after the agency made its decision, and after litigation had started, because "it is proper to require the agency to provide a more adequate explanation of its reasons," and the agency's belated articulation simply confirmed what the "pre-decisional record" already suggested).

True, as End Citizens United points out, the D.C. Circuit has said that "[r]equiring a statement of reasons by the declining-to-go-ahead Commissioners at the time when a deadlock vote results in an order of dismissal . . . contributes to reasoned decisionmaking by the agency; it ensures reflection and creates an opportunity for self-correction." *Common Cause v. FEC*, 842 F.2d 436, 449 (D.C. Cir. 1988). But a belated statement still "facilitat[e]s judicial review" and "enhances the predictability of Commission decisions for future litigants by explaining the Commissioners' views to the public. ECF No. 10 at 14 (cleaned up) (quoting *Common Cause*, 842 F.2d at 449). In the end, End Citizens United has pointed to no case in which a court declined to consider the only explanation provided by the "controlling Commissioners"—*i.e.*, the Commissioners who voted against enforcement—simply because it was not provided at the time they voted.[4] In fact, it appears it is common for the FEC to wait "weeks or months" after it has decided to dismiss a

---

[4] In *Commission on Hope,* the court did decline to a consider one Commissioner's rationale for voting to proceed with enforcement because it was issued four months after the plaintiff sued, and the other Commissioners, including the controlling Commissioners, had provided their rationale long beforehand. 892 F.3d at 437, 438 n.5.

complaint "before providing the basis for any dismissal." *Citizens for Resp. & Ethics in Washington v. FEC*, 799 F. Supp. 2d 78, 90 (D.D.C. 2011).

Second, End Citizens United contends—in a footnote, and without further elaboration—that "[t]he controlling Commissioners' attempt to insulate their legal reasoning from judicial review by invoking prosecutorial discretion fails given that their justification for exercising that discretion relies entirely on factual and legal conclusions that are contrary to law." ECF No. 10 at 21 n.6. This argument is unpersuasive for several reasons. The Commissioners justified their nonenforcement decision by citing concerns that are obvious hallmarks of prosecutorial discretion—factors like the agency's "scarce resources," the need to address a backlog of matters "imperiled by the statute of limitations," and the likelihood of collecting a penalty that would offset the agency's "expenses in obtaining it." Statement of Reasons at 3; *see also Citizens for Resp. & Ethics in Washington v. Am. Action Network*, No. 18-cv-945 (CRC), 2022 WL 612655, at *6 (D.D.C. Mar. 2, 2022) ("prudential considerations, like whether enforcement aligns with the agency's priorities or is worth spending resources on, reflect the quintessential exercise of 'prosecutorial discretion'"). Simply put, these justifications do not rely on "factual and legal conclusions that are contrary to law." Moreover, even to the extent the Commissioners relied on legal analysis for some part of their exercise of discretion, their decision remains unreviewable. The D.C. Circuit has "rejected" past "attempt[s] to carve out the Commission's" reviewable analysis "from its exercise of enforcement discretion." *New Models*, 993 F.3d at 886; *see also Commission on Hope*, 892 F.3d at 442 ("The law of this circuit 'rejects the notion of carving reviewable legal rulings out from the middle of non-reviewable actions.'") (citation omitted). Indeed, "the Supreme Court has flatly rejected the principle that if an agency gives a reviewable reason for otherwise unreviewable action, the action becomes reviewable." *New Models*, 993 F.3d at 886 (cleaned up).

In sum, the Court can consider the Statement of Reasons issued by the Commissioners who voted against enforcement, and their explanation "explicitly relies on prosecutorial discretion" to dismiss End Citizen United's complaint. *New Models*, 993 F.3d at 885. Thus, this Court lacks any authority to review the dismissal, and in turn may not grant summary judgment for End Citizens United.

\*   \*   \*

For all these reasons, the Court will deny End Citizen United's motion for default judgment. Moreover, because the Court lacks the authority to review the FEC's dismissal of End Citizen United's complaint, this case must be dismissed for lack of subject matter jurisdiction. *See Swecker v. Coop.*, 253 F. Supp. 3d 274, 280 (D.D.C. 2017) (courts "lack[] subject-matter jurisdiction" to review a "decision . . . committed to agency discretion by law"); *Int'l Ctr. For Tech. Assessment v. Thompson*, 421 F. Supp. 2d 1, 6 n.2 (D.D.C. 2006) (similar). A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: April 18, 2022